IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02515-MSK-CBS

VICTOR S. ARCHULETA,
        Plaintiff,
v.

ADAMS COUNTY BOARD OF COUNTY COMMISSIONERS,
DOUG DARR, Sheriff, Adams County Detention Facility,
MELANIE GREGORY, Technical Services Manager, Adams Country Detention Facility,
JAMES MCKENZIE, Sergeant/ Investigator, Adams Country Detention Facility,
ROBERT NANNEY, Deputy, Adams Country Detention Facility,
JUSTIN SPENCE, Deputy, Adams Country Detention Facility,
[JAMES] HINRICHS, Sergeant, Adams Country Detention Facility, and
VINCE POTTER, Deputy, Adams Country Detention Facility,
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Craig B. Shaffer

This civil action comes before the court on "Defendants Adams County, Darr, Gregory, McKenzie, Hinrichs, and Potter's Motion for Summary Judgment" (filed November 3, 2010) (Doc. # 169).[1] Pursuant to the Order of Reference dated February 27, 2008 (Doc. # 22) and the memorandum dated November 4, 2010 (Doc. # 170), this matter was referred to the Magistrate Judge.  The court has reviewed the Motion, Plaintiff's Response (filed April 15, 2011) (Doc. # 201) and Affidavit (filed April 15, 2011) (Doc. # 202), Defendants' Reply (filed April 28, 2011) (Doc. # 203), the exhibits and affidavits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Mr. Archuleta is currently incarcerated at the Colorado State Penitentiary ("CSP") of the Colorado Department of Corrections ("CDOC") in Cañon City, Colorado. (*See*

_____

[1]    Defendants Nanney and Spence do not move for summary judgment.

Amended Complaint ("AC") (Doc. # 24) at p. 2 of 12).  At the time that the pleadings and the instant Motion, Response, and Reply were filed, Mr. Archuleta was proceeding in his *pro se* capacity.  On May 6, 2011, counsel entered their appearances on behalf of Mr. Archuleta.  (*See* Docs. # 204 and # 205).

In April 2007 Mr. Archuleta was temporarily housed at the Adams County Detention Facility ("ACDF") in Brighton, Colorado for a court appearance or "writ."  (*See* Doc. # 24 at p. 5 of 12).  Mr. Archuleta alleges that on April 11, 2007, Defendants Nanney and Spence used excessive force that caused him to strike his forehead on a metal electrical box in the stairway of B Module, resulting in injury.  (*See id.* at pp. 5-6 of 12).  Mr. Archuleta brings three claims pursuant to 42 U.S.C. § 1983 based on the alleged incident of excessive force. Claim One alleges "Cruel and Unusual Punishment, 8th Amendment, U.S. Const. and Pre-trial Punishment, 5th Amendment, U.S. Const." (*See id.* at p. 8 of 12).[2]  Claim Two alleges "Failure to provide a reasonable safe environment, 8th Amendment and Procedural due process, 14th Amendment, U.S. Const." (*See* Doc. # 24 at p. 9 of 12).[3]  Claim Three

---

[2]  To the extent that Mr. Archuleta alleges a claim under the Fifth Amendment, the Fifth Amendment due process clause only protects against due process violations caused by federal government actors.  There is no allegation in this civil action of any conduct by federal government actors.  The jail where the events occurred is a county facility and its deputies are county employees.  As none of the Defendants are subject to the due process clause of the Fifth Amendment, Mr. Archuleta fails to state a claim pursuant to the Fifth Amendment.

[3]  To the extent that Mr. Archuleta brings his claim pursuant to the Fourteenth Amendment, he has alleged that he was a convicted prisoner while he was temporarily incarcerated at the ACDF.  The Supreme Court recognized that the same facts could give rise to both an Eighth Amendment cruel and unusual punishment claim and a substantive due process claim under the Fourteenth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 326-27 (1986).  "Every circuit that has considered the question has concluded that the Eighth Amendment is the primary source of substantive rights of prisoners and that, with regard to the rights of convicted prisoners, the legal standards under the Eighth and Fourteenth Amendments generally are congruous." *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1494 n. 6 (10th Cir. 1990) (citations omitted).

> [W]e conclude that the safety and bodily integrity of convicted prisoners implicates both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's substantive protection against state deprivation of life and liberty without due process of law, and that the legal standards under the two amendments are

alleges "Mental & Emotional Damage, 42 U.S.C.A. § 1997(e) Deliberate Indifference, 8th Amendment, U.S. Const." (*See id.* at p. 10 of 12).  Mr. Archuleta seeks declaratory relief that Defendants "have acted in violation of the United States Constitution and civil rights," and injunctive relief "compelling Adams County to provide a salary fixed base, . . . new training," and to prohibit "further retaliation." (*See* Doc. # 24 at p. 12 of 12).  Mr. Archuleta also seeks "nominal damages, compensatory damages, and punitive damages." (*See id.*).

In the original Complaint, Mr. Archuleta named Defendants Adams County, Darr, Gregory, McKenzie, Spence, Nanney, Hinrichs, and John or Jane Doe.  (*See* Doc. # 3).  On February 7, 2008, Senior District Judge Weinshienk dismissed Defendant McKenzie.  (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 16)).

---

identical under the facts of this case.  Because the Eighth Amendment provides the primary source of protection for prisoners, we will, however, refer to the standard as an Eighth Amendment standard.
*Berry*, 900 F.2d at 1494 n. 6 (10th Cir. 1990) (citations omitted).

The Tenth Circuit Court of Appeals has "previously noted that where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (citations omitted).  *See also Daniels v. Williams*, 474 U.S. 327, 340 n. 16 (1986) (Stevens, J., concurring in judgments in *Daniels* and *Davidson v. Cannon*, 474 U.S. 344 (1986) ( "in these circumstances [inmate injured in attack by fellow inmate], . . . the substantive constitutional duties of prison officials to prisoners are defined by the Eighth Amendment, not by substantive due process"); *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) ("[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims.") (citations, internal quotations, and brackets omitted), *overruled in part on other grounds by Unitherm Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006).

Mr. Archuleta's claim is  properly addressed under the Eighth Amendment, as a claim for denial of a reasonably safe environment is essentially a cruel and unusual punishment claim.   *See Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (citing *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980) (Eighth Amendment includes inmates' right to reasonably safe environment).  *See also Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").  The court therefore applies the Eighth Amendment standard in evaluating Mr. Archuleta's claims.

>As for Defendant James McK[e]nzie, Plaintiff fails to state a claim of a constitutional deprivation against Defendant McK[e]nzie. Plaintiff states that Defendant McK[e]nzie violated his constitutional rights when he failed, after he had concluded an investigation of the assault, to ask Plaintiff whether he desired to file a complaint against Defendants. Plaintiff fails to assert any constitutional basis for this claim, and the Court is unaware of any constitutional right that Plaintiff has to be asked if he wants to pursue charges against someone who assaults him.

(Doc. # 16 at p. 2 of 3). In the AC, Mr. Archuleta again named Defendant McKenzie, as well as Defendants Adams County, Darr, Gregory, Nanney, Spence, Hinrichs, and Potter. (*See* Doc. # 24). On March 20, 2009, Senior District Judge Weinshienk approved the Magistrate Judge's Recommendation to deny the "Motion to Dismiss Plaintiff's Amended Complaint" filed by Defendants Adams County Board of County Commissioners, Darr, Gregory, Nanney, Spence, and Hinrichs and joined by Defendants McKenzie and Potter and Mr. Archuleta's "Motion for Leave to File an Amended Complaint." (*See* Docs. # 99, # 90, # 59, # 35). On March 31, 2010, Senior District Judge Weinshienk rejected the Magistrate Judge's Recommendation that Defendants' Motion for Summary Judgment be granted based on failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), determining that "[a]t this juncture, the evidence presented by Plaintiff is marginally sufficient to overcome summary judgment." (*See* Doc. # 126 at p. 8 of 9). Defendants Adams County, Darr, Gregory, McKenzie, Hinrichs, and Potter now move for summary judgment on additional grounds.

## II.    Standard of Review

Summary judgment is proper "when there is no genuine dispute as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

>Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. A factual dispute is genuine and summary judgment is precluded if the evidence presented in support of and opposition to the

motion is so contradictory that, if presented at trial, a judgment could enter for either party. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.

*Johnson v. Liberty Mutual Fire Ins. Co.*, 653 F. Supp 2d 1133, 1137 (D. Colo. 2009) (internal quotation marks and citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the AC has been sworn to under penalty of perjury (*see* Doc. # 24 at p. 12 of 12), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely

5

conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).  The court must determine whether Mr. Archuleta has met his burden of presenting specific facts to overcome Defendants' Motion.

III.    Analysis

Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Mr. Archuleta] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component,

whether the officials acted with a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  Thus, in a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.' "  *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).  A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

A.     Defendant Potter

Mr. Archuleta alleges that Defendant Potter may have been the person who harassed him on April 5, 2007 by calling him names.  (*See* Doc. # 24 at p. 5 of 12; Deposition of Victor Archuleta (Doc. # 169-1) at p. 2 of 8).  Mr. Archuleta alleges that Defendant Potter may have been the person who called him a "faggot" in front of other inmates and that this name-calling put his safety at risk.  (*See* Doc. # 169-1 at pp. 2, 6 of 8).  Mr. Archuleta was returned to CSP on April 12, 2007.  (*See* Doc. # 24 at p. 7 of 12 , ¶ 17; Doc. # 169-1 at p. 8 of 8).  Mr. Archuleta admits that he never had any interactions with other inmates at ACDF after the alleged name-calling incident and that no inmate attempted to harm him because of the comment.  (*See id.* at p. 7 of 8).

The Eighth Amendment places a burden on prison officials to "take reasonable

measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).   A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.   *Farmer*, 511 U.S. at 834.   In order to establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm," the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.   *Id.* at 834.

As the alleged name calling admittedly did not expose Mr. Archuleta to any danger, there is no evidence to create a material fact dispute whether he was incarcerated under conditions that posed a substantial risk of serious harm.   Mr. Archuleta has alleged no more than a remote possibility of danger that is too speculative and uncertain to support a cognizable claim.

Mr. Archuleta also alleges, and it is undisputed, that on April 5, 2007 Defendant Potter removed him from his cell and placed him in the B Module visiting room to calm down outside the presence of other inmates because of his disruptive behavior in the pod. (*See* Doc. # 24 at p. 5 of 12;  Doc. # 169-1 at pp. 2, 3, 5, 6 of 8;  Affidavit of Vincent Potter (Doc. # 169-2) at p. 2, ¶ 6;  Plaintiff's Affidavit (Doc. # 202) at p. 3 of 50; Responses to Interrogatories (Doc. # 202-1) at p. 16 of 35).   After Mr. Archuleta threw trash out on the tier, shouted and cursed at deputies, and approached deputies in an aggressive manner with a shower or toilet brush, he was placed in the visiting room, where he then kicked the door and spit on the window.  (*See* Doc. # 169-1 at pp. 2, 3, 5, 6 of 8;  Doc. # 169-2 at p. 2, ¶ 6; Doc. # 202 at pp. 1-3 of 50;  Doc. # 201 at p. 6 of 42).  Mr. Archuleta alleges that his placement in the visiting room was a violation of his constitutional rights based on deprivation of "drinking water, an operable toilet and wash basin, and an emergency intercom-link" during the time period he was held in the visiting room.  (*See* Doc. # 202 at

p. 15 of 50).

Substantial deprivations of adequate drinking water, shelter from extreme heat or cold, food, and sanitation for a significant period of time are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See, e.g., Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (finding that prisoners asserted a sufficiently serious deprivation by alleging that prison officials held them outside without access to adequate shelter, water, food, or sanitation for four days when the temperatures ranged from 70 to 94 degrees and for 17 hours in sub-freezing temperatures).   However, temporary deprivations of sanitation, water, and shelter that last only a short amount of time and do not pose a serious threat of harm to the prisoner do not give rise to deprivations that are sufficiently serious to support an Eighth Amendment claim. *See, e.g., Dellis v. Corrections Corporation of America*, 257 F.3d 508, 511 (6th Cir. 2001) (prisoner who was temporarily denied access to a "working toilet" did not suffer deprivation of "minimized civilized measure of life's necessities");   *Barney v. Pulsipher*, 143 F.3d 1299, 1311-12 (10th Cir. 2001) (holding that a situation involving filthy cells, poor lighting, inadequate ventilation or air cooling, and unappetizing food "simply [did] not rise to the level of a constitutional violation" where prisoners were exposed to the conditions for only forty-eight hours and listing cases in which a few days spent in unsanitary conditions did not violate the Eighth Amendment); *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (recognizing that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment");   *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 676–78 (N.D. Ill. 2009) (finding that deprivations were not sufficiently serious where prisoners were detained in a prison yard while handcuffed without access to water, food, or toilets in 80 to 85 degree temperatures for up to five hours during a search of living quarters);   *Sital v. Burgio*, 592 F. Supp. 2d 355, 359 (W.D.N.Y. 2009) (conditions of prisoner's confinement for six days in drug-watch room so that officers could examine his excretions to see if they contained

drugs did not constitute violation of Eighth Amendment); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (finding that a five hour deprivation of water did not rise to the level of an Eighth Amendment violation); *Kanvick v. Nevada*, 2010 WL 2162324, at *5–6 (D. Nev. Apr.27, 2010) (noting "that a temporary deprivation of access to toilets, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation" and holding that deprivation of access to restrooms lasting up to two hours was not sufficient to support an Eighth Amendment claim);

The evidence in the record does not support Mr. Archuleta's allegation of a constitutional violation. The inmate visiting room is larger than Mr. Archuleta's cell. (*See* Doc. # 169-1 at p. 6 of 8). Mr. Archuleta does not allege that he was placed in this room for an unreasonable period of time. He does not recall how long he was in the visiting room on April 5, 2007. (*See id.* at pp. 5, 6 of 8). "Shortly after," he was escorted "out of B Module and to a Pre-release ("PR") cell," which "did provide me with reasonable access to such minimal civilized measures in life's necessities." (*See* Doc. # 24 at p. 5 of 12; Doc. # 202 at p. 3 of 50; Doc. # 201 at pp. 6-7 of 42). Mr. Archuleta does not allege that he was harmed as a result of his temporary placement in the visiting room. The alleged deprivations were temporary and the duration was not such that it posed a threat of serious physical harm or illness. Mr. Archuleta has not demonstrated that the visiting room was an unsafe or inhumane location. As to the objective component, Mr. Archuleta does not demonstrate a deprivation "of the minimal measure of life's necessities," as required to prevail on an Eighth Amendment claim.

As to the subjective component, Mr. Archuleta admits that Defendant Potter did not treat him cruelly or set out to harm him. (*See* Doc.# 169-1 at p. 6 of 8). Mr. Archuleta has not adequately demonstrated that Defendant Potter acted with deliberate indifference to a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference").

Finally, Mr. Archuleta alleges that Defendant Potter was present at the time that he injured his forehead and failed to intervene. (*See* Doc. # 24 at p. 5 of 12).  He has since admitted that Defendant Potter was not present at ACDF at the time of his injury.  (*See* Doc. # 169-1 at p. 8 of 8;  Doc. # 169-2 at pp. 1-2, ¶¶ 3-5).  In sum, Defendant Potter is entitled to summary judgment on the claims in the AC.

B.     Defendant Gregory

The entirety of Mr. Archuleta's allegations against Defendant Gregory is:

> Undersheriff, Melon[ie] Greg[ ]ory, was responsible to manage the subordinate actions of Deputy Spence and Deputy Nanney, but after finding out and being advised of their actions, the two deputies were only re-located in the jail, which puts other inmates at risk as well.  She also re-located Deputy Vince Potter, who was present when plaintiff was injured; however, Deputy Clarke Deloian was not.

(*See* Doc. # 24 at p. 9 of 12).

Defendant Gregory is the Technical Services Manager and has no responsibility for supervision of Sheriff's deputies. (*See* Affidavit of Melanie Gregory (Doc. # 169-4) at pp. 1-2 of 2, ¶¶ 2, 4, 5).  Mr. Archuleta admits that he "wasn't intentionally trying to sue the technical services manager, I was intentionally trying to sue the facility administrator." (*See* Doc. # 169-1 at p. 3 of 8).  Defendant Gregory does not have authority over assignments, discipline, or training for Deputies at ACDF.  (*See id.* at p. 2 of 2, ¶¶ 6-9).  Defendant Gregory was not present at the ACDF on the date Mr. Archuleta alleges that Defendants Nanney and Spence used excessive force that caused him injury.

Mr. Archuleta sues Defendants Darr, Gregory, McKenzie, Hinrichs, and Potter in both their individual and official capacities. (*See* Doc. # 24 at p. 4 of 12).  To the extent that Mr. Archuleta is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *Kentucky v. Graham*, 473 U.S. 159, 165-67

11

(1985).  Personal participation by the named defendants is an essential allegation in a civil rights action.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial"); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.1996) ("personal participation is an essential element in a § 1983 claim") (internal quotation marks and citation omitted).  Mr. Archuleta must show that each Defendant caused the deprivation of a federal right.  *See Graham*, 473 U.S. at 166 ("to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right").  To the extent that Mr. Archuleta is suing Defendant Gregory in her individual capacity, he admits that he had no personal contact with her.  In his Response and Affidavit, Mr. Archuleta makes no mention of Defendant Gregory.  He presents no facts from which it may be inferred that Defendant Gregory personally participated in a violation of his civil rights.

Regarding the subjective component of his Eighth Amendment claim, whether the official acted with a sufficiently culpable state of mind, Mr. Archuleta admits that Defendant Gregory never treated him cruelly and did not intend to cause him any harm.  (*See* Doc. # 169-1 at pp. 3-4 of 8).  In sum, Mr. Archuleta does not contest that Defendant Gregory is not liable for any of the claims in this case and that she is entitled to summary judgment.

C.      Defendant McKenzie

Mr. Archuleta received medical care for a laceration on his forehead at ACDF and Platte Valley Medical Center on April 11, 2007.  He was returned to CSP and seen by medical providers on April 12, 2007.  (*See* Doc. # 24 at p. 7 of 12 , ¶ 17;  Doc. # 169-1 at p. 8 of 8;  Doc. # 202 at pp. 21-23 of 50).  Upon arrival at CSP, Mr. Archuleta had a sutured

laceration on his forehead and a healing bruise on his left chest. (*See* Doc. # 202 at pp. 21-23 of 50). Mr. Archuleta alleges that Defendant McKenzie obtained his medical records but failed to forward them to CSP medical staff and failed "to send his written findings of the incident." (*See* Doc. # 24 at pp. 7, 9, 10 of 12). Mr. Archuleta alleges that because medical and incident records were not provided to CSP, he received inadequate medical care and disciplinary convictions at CSP. (*See id.*).

The evidence shows that Defendant McKenzie never possessed Mr. Archuleta's medical records and did not prepare a written incident report. (*See* Affidavit of Detective McKenzie (Doc. # 169-5) at ¶¶ 3-11). Mr. Archuleta has not presented evidence to the contrary. As Defendant McKenzie never had possession of the medical records and had no knowledge of or responsibility for medical treatment at CSP, he could not have provided those records to CSP and cannot be held liable for alleged inadequate medical care at CSP.

Mr. Archuleta admits that Defendant McKenzie "didn't have anything to do with anything involving the harassment and discrimination in B module, or my injury." (*See* Doc. # 169-1 at p. 4 of 8). To the extent that Mr. Archuleta alleges a conversation with Defendant McKenzie on April 11, 2007 (*see* Doc. # 24 at p. 7 of 12, ¶ 16; Doc. # 202 at p. 11 of 50), such allegation does not state a claim for violation of any constitutional right. Mr. Archuleta also argues in his Response that Defendant McKenzie destroyed or allowed to be destroyed "video surveillance footage from Camera 98 of the incident in B Module as the ACDF. . . ." (*See* Doc. # 201 at pp. 40-41 of 42). The AC contains no allegation against Defendant McKenzie regarding the video tape. The evidence indicates that Defendant McKenzie downloaded for preservation certain video footage relevant to the incident on April 11, 2007. (*See* Doc. # 202-1 at p. 6 of 35). The evidence indicates that Camera 98 "did not capture anything related to Plaintiff's injury" and that any video footage that was not specifically downloaded for preservation was "purged automatically from the

system approximately every 7-10 days." (*See id.*).  Other than his conclusory arguments, Mr. Archuleta has not presented any evidence to contradict the evidence Defendant McKenzie presents on summary judgment.  (*See* Doc. # 201 at pp. 10-11, 14 of 50;  Doc. # 202 at pp. 40-41 of 42).  Mr. Archuleta fails to establish that Defendant McKenzie violated his civil rights.

D.     Defendant Hinrichs

Mr. Archuleta alleges that Defendant Hinrichs "knew about a rising conflict between plaintiff and deputies in B Module pursuant to April 5, 2007, but failed to responsibly remedy the situation, w[h]ich would have prevented the assault and injury of plaintiff while Deputies Spence, Nanney, Potter, and Deloian were working in B later that week." (*See* Doc. # 24 at p. 10 of 12;  *see also* Doc. # 202 at p. 4 of 50).  "[D]espite plaintiff[']s request for support and concerns for his safety, plaintiff was ordered back to Unit B by Serg[e]ant Hinrichs . . . ." (*See* Doc. # 24 at p. 5 of 12;  *see also* Doc. # 202 at p. 4 of 50).  Mr. Archuleta states that on April 5, 2007 he told Defendant Hinrichs that he "did not want to go back to B Module because I was being called names in front of other prisoners, because I was being harassed for everyone[']s garbage thrown out onto the top mezzanine, and because I also feared for my health and safety from B Module deputy sheriffs." (*See* Doc. # 202 at p. 4 of 50).  Mr. Archuleta argues that Defendant Hinrichs ordered him to return to B Module with deliberate indifference to a substantial risk of harm to his safety.  (*See* Doc. # 201 at pp. 7, 25-26 of 42).

The alleged name calling admittedly did not expose Mr. Archuleta to any actual harm.  (*See* Doc. # 169-1 at p. 7 of 8).  Name-calling and verbal harassment do not rise to the level of a constitutional violation.  *See Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221-22 (S.D. Cal. 1997) (collecting cases).  Failing to protect Mr. Archuleta from name calling does not amount to a constitutional violation.  The date that Mr. Archuleta spoke to Defendant

Hinrichs was prior to the incident with Defendants Spence and Nanney.  Mr. Archuleta's allegation of a speculative possibility of verbal harassment and harm does not support a cognizable claim for violation of his constitutional rights.  *See, e.g., King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("The Constitution does not protect all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.").  There is no evidence to create a material fact dispute whether Defendant Hinrichs disregarded circumstances that posed a substantial risk of serious harm to Mr. Archuleta.

Mr. Archuleta also argues that Defendant Hinrichs was deliberately indifferent to his safety based on his review of and signature on written reports in his capacity as a supervisor.  (*See* Doc. # 202 at pp. 31-34, 36;  Doc. # 201 at p. 8 of 42).  The uncontroverted evidence shows that Defendant Hinrichs merely signed the reports as part of his supervisory duties.  (*See id.*).  Mr. Archuleta has not established that Defendant Hinrichs participated in any violation of his constitutional rights.  *See Johnson v. Wright*, 234 F. Supp. 2d  352, 364 (S.D.N.Y. 2002) ("Mere awareness of a constitutional violation . . . is insufficient to impose liability."); *accord Morrison v. Johnson*, 2006 WL 2811802 at *20 (N.D.N.Y. Sept. 28, 2006) ("knowledge alone is insufficient to establish any of the elements of personal involvement").

As to the subjective component of an Eighth Amendment claim, Mr. Archuleta admits that Defendant Hinrichs did not treat him cruelly or take any actions to cause him harm.  (*See* Doc. # 169-1 at p. 5 of 8).  Mr. Archuleta fails to establish that Defendant Hinrichs violated his civil rights.

E.      Defendant Adams County

Mr. Archuleta alleges that Defendant Adams County Board of County

Commissioners "is and was responsible to adequately fund jail operations within its jurisdiction; wherefore, the jail at the time relev[a]nt to the incident stated herein, was understaffed and failed to meet this burden by not supplying A.C.D.F. with funding for salaries for sup[ ]ervisors, such as a Sergeant or L[i]eutenant, to be placed in each pod to supervise the actions of other Sher[ ]iff Deputies.  It is also required to have video surv[ei]llance throughout the facility to ensure the protection of inmates as well as staff." (Doc. # 24 at p. 9 of 12).

First, to the extent that Mr. Archuleta alleges that the Board of County Commissioners is responsible for staffing levels, salaries, and equipment at ACDF, the Board is not liable for operation of ACDF or supervision of Sheriff's deputies.  The Sheriff of Adams County, not the Board of County Commissioners, is in charge of ACDF.  *See* Colo. Rev. Stat. § 30-10-511.  "[T]he sheriff shall have charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself or through a deputy or jailer."  Colo. Rev. Stat. § 30-10-511.  The "sheriff, rather than the county or the Board [of Commissioners], would be liable for the action of the deputy sheriff" on the basis that "[u]nder both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities."  *Tunget v. Board of County Com'rs of Delta County*, 992 P.2d 650, 651-652 (Colo. App. 1999).  The Sheriff has the right of control over the deputy sheriffs and may be held liable for their actions.  *Seeley v. Board of County Commissioners*, 791 P.2d 696 (Colo. 1990) (citing Colo. Rev. Stat. § 30-10-506).  The Board of County Commissioners has certain enumerated powers and operation of the jail is not one of them. *See* Colo. Rev. Stat. § 30-11-107.  *See also Bristol v. Board of County Com'rs of County of Clear Creek*, 312 F.3d 1213, 1215 (10th Cir. 2002) (applying the ruling in *Tunget* to reject an argument that the board was the employer of a confinement officer for ADA accommodation).

Second, Mr. Archuleta presents no evidence to support his allegation that ACDF was understaffed, underfunded or under-equipped.   Other than Mr. Archuleta's conclusory allegations, there is no evidence in the record of the level of staffing, funding, or equipment at ACDF.   Even if evidence of staffing, funding, and equipment levels were present in the record, there is no evidence that the alleged excessive force resulted from such conditions. Section 1983 requires proof of an affirmative causal connection between the alleged deficiency and the constitutional deprivation.   *See Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (plaintiff "must identify a specific deficiency in the county's training program closely related to [Mr. Daniels'] ultimate injury, and must prove that the deficiency in training actually caused [jail personnel] to act with deliberate indifference.").   The court concludes that summary judgment is properly granted as to Defendant Adams County Board of County Commissioners.

F.   Defendant Darr

Mr. Archuleta alleges that Defendant Darr "is responsible for training deputies, as their Respondeat Superior, upon w[h]ich he consciously created a policy and custom for deputies to follow, w[h]ich put plaintiff[']s personal safety at risk."   (*See* Doc. # 24 at p. 9 of 12).

To the extent that Mr. Archuleta sues Defendant Darr in his individual capacity, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (citation omitted).   *See also Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151-52 (10th Cir. 2006) ("There is no concept of strict supervisor liability under § 1983.");   *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo. 2009) ("*respondeat superior* is not within the purview of § 1983").   "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."   *Serna*,

17

455 F.3d at 1151-52. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Serna*, 455 F.3d at 1151-52. *See also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

"The test for supervisory liability under § 1983 requires allegations of personal direction or of actual knowledge and acquiescence in conduct alleged to have violated the constitutional rights of a citizen." *Sanders v. Board of County Com'rs of County of Jefferson, Colorado*, 192 F. Supp. 2d 1094, 1119 (D. Colo. 2001) (citations omitted). Mr. Archuleta must show "that the sheriff was aware of and disregarded an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk." *Lopez v. Lemaster*, 172 F.3d 756, 761 (10th Cir.1999). Mr. Archuleta has neither alleged nor presented evidence that Defendant Darr was aware of his alleged problems while housed at ACDF or acquiesced to the alleged excessive force by Defendants Spence and Nanney. To the contrary, the evidence shows that Mr. Archuleta had no personal interaction with Defendant Darr while he was at ACDF. (*See* Doc. # 169-1 at p. 3 of 8). As Mr. Archuleta has not demonstrated the violation of a constitutional right by Defendant Darr, Defendant Darr is entitled to summary judgment in his individual capacity.

To the extent that Mr. Archuleta sues Defendant Darr in his official capacity, "a judgment against a public servant in his official capacity imposes liability on the entity he represents . . . ." *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985) (internal quotation marks and citation omitted). *See also Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("[a]n action against a person in his official capacity is, in reality, an action

18

against the government entity for whom the person works.").

A municipality or other governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 694-95, 698 (1978)).  Thus, in order to hold the Defendant Darr liable in his official capacity under § 1983, Mr. Archuleta must prove that "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir.1998) (citing *Monell*, 436 U.S. at 694).  *See also Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir.1996) ("To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.").

An unconstitutional deprivation is caused by a municipal "policy" if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997).  *See also Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("For a county to be held responsible, it must have caused the harm through the execution of its own policy or custom by those whose edicts or acts may fairly be said to represent official policy.") (citation omitted).  Similarly, "custom" has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law. *Id.* at 404.

Mr. Archuleta does not allege in the AC or show by the evidence the existence of a government policy or custom that deprived him of a constitutional right.  Other than Mr. Archuleta's conclusory allegation and arguments in his Response, there is no evidence in the record that his injury was caused by a policy or custom.  (*See* Doc. # 24 at p. 9 of 12,

¶ 2;  Doc. # 201 at pp. 18-20 of 42;  Doc. # 202).  As to Mr. Archuleta's argument that there was a policy "to officially confine disruptive inmates up inside a module's upstairs inmate social visiting room at the ACDF for up to 4 hours," (*see* Doc. # 201 at pp. 28, 32 of 42), the court has determined that Mr. Archuleta's allegation of placement in the visiting room on April 5, 2007 does not establish an Eighth Amendment violation.  Thus, Mr. Archuleta cannot show that any policy or custom of Defendant Darr at the jail caused a constitutional violation.  *See Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted); *Wilson v. Meeks*, 98 f.3d 1247, 1255 (10th Cir. 1996) ("a municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").  There are no allegations or evidence that Defendant Darr implemented a policy or custom in the Inmate Handbook regarding temporary placement of disruptive inmates in the visiting room.  (*See, e.g.*, Doc. # 202-1 at p. 14  of 35, Response to (10); p. 28 of 35 Response to (5).).  As Mr. Archuleta admits that Defendant Darr did not intend him any harm (*see* Doc. # 169-1 at p. 3 of 8), he has not demonstrated deliberate indifference.  *See Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) ("municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused") (internal quotation marks and citations omitted).

The court finds Mr. Archuleta fails to allege or demonstrate sufficient facts to establish an unconstitutional custom or policy or a direct causal connection between a custom or policy at ACDF and the alleged constitutional violation.  Thus, Defendant Darr in his official capacity is entitled to summary judgment on the AC.

Accordingly, IT IS RECOMMENDED that:

1.      "Defendants Adams County, Darr, Gregory, McKenzie, Hinrichs, and Potter's Motion for Summary Judgment" (filed November 3, 2010) (Doc. # 169) be GRANTED.

2.      Judgment on the Amended Complaint (Doc. # 24) be entered in favor of Defendants Adams County Board of County Commissioners, Doug Darr, Melanie Gregory, James McKenzie, James Hinrichs, and Vince Potter and against the Plaintiff.

3.      The case will proceed on Mr. Archuleta's claim against Defendants Nanney and Spence only based on the alleged use of excessive force on April 11, 2007.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus*

*Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);   *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 14th day of June, 2011.

BY THE COURT:


 s/Craig B. Shaffer
United States Magistrate Judge